UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL THOMPSON,

           Petitioner,                       Hon. Gordon J. Quist

v.                                        Case No. 1:09-CV-976

BLAINE LAFLER,

           Respondent.

_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on Thompson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Thompson's petition be **denied**.


## BACKGROUND

       As a result of events that occurred between May 1, 2003, and July 16, 2004, Petitioner was charged with two counts of First Degree Criminal Sexual Conduct.  (Plea Transcript, April 15, 2005, 3-5).  Pursuant to a plea agreement, Petitioner pleaded no contest to these two charges.  *Id.* at 11-15.  Petitioner was sentenced to serve 30-90 years in prison.  (Sentencing Transcript, May 5, 2005, 23).  Asserting the following claims, Petitioner later moved in the Michigan Court of Appeals for leave to appeal his convictions and sentence:

1

I.      The trial court erred in scoring certain offense
        variables.

II.     The trial court erred by departing upward from the
        guidelines.

III.    The sentence constitutes cruel and unusual
        punishment.

The Michigan Court of Appeals denied Petitioner's motion for leave to appeal for

lack of merit in the grounds presented. *People v. Thompson*, No. 269394, Order (Mich. Ct. App.,

May 16, 2006). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for

leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the

questions presented should be reviewed by this Court." *People v. Thompson,* No. 131573, Order

(Mich., October 31, 2006). Petitioner later filed in the trial court a motion for relief from judgment

in which he asserted the following claims:

I.      Defendant must be allowed to withdraw his plea as it was based upon an
        illusory bargain.

II.     Ineffective assistance of trial counsel.

III.    Ineffective assistance of appellate counsel.

Petitioner's motion was denied. *People v. Thompson*, No. 05-51490-FC, Opinion and

Order (Muskegon Cnty. Cir. Ct., November 8, 2007). Plaintiff then moved in the Michigan Court

of Appeals for leave to appeal, asserting the following claims:

I.      Plea must be set aside because it was based upon an
        illusory bargain containing an agreement to dismiss
        charges which the defendant could not be convicted
        of.

II.     Defense counsel's recommendation of illusory
        bargain and defendant being given inadequate time

2

and inadequate assistance from counsel in considering and understanding it, as well as failing to inform the defendant or the court of exculpatory evidence which he had knowledge of, constituted ineffective assistance of counsel.  Also, appellate attorney's failure to investigate and raise claims of ineffective assistance of trial counsel, and other issues as requested by defendant constitutes ineffective assistance of appellate counsel.

III.    Court abused its discretion by failing to exercise sound, reasonable and legal decision making.  And violated defendant's constitutional rights.

The Michigan Court of Appeals denied Petitioner's request because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Thompson*, No. 288715, Order (Mich. Ct. App., January 7, 2009).  Petitioner appealed the matter to the Michigan Supreme Court, which likewise rejected Petitioner's application for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Thompson*, No. 138318, Order (Mich., August 6, 2009).  On October 22, 2009, Petitioner initiated the present action in which he asserts the following claims:

I.    The trial court's acceptance of and reliance upon a no contest plea agreement which contained an illusory bargain violated constitutional due process.

II.    Ineffective assistance of counsel violated Defendant's Sixth Amendment rights.

III.    Ineffective assistance of appellate counsel.

IV.    Trial court erred in the scoring of certain offense variables, and by departing upward from the guidelines creating a sentence which is cruel and unusual punishment violating ex post facto clause.

## STANDARD OF REVIEW

Thompson's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>       (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
>       (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause

4

of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing

5

evidence to the contrary." *Ayers*, 623 F.3d at 308.  Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007).  This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2).  This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).  Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85.  Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision

is more likely." *Id.*  If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.      Procedural Default

As noted above, Petitioner has asserted four claims in his petition for writ of habeas corpus.  Respondent asserts that this Court cannot review the merits of Petitioner's claims because he has procedurally defaulted such.  The Court disagrees.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.  *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

The Sixth Circuit employs a multi-part test to determine if a petitioner has

procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply; (2) the last state court rendering a judgment in the matter must have actually enforced the state procedural rule; (3) application of the procedural rule in question must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner cannot demonstrate cause and prejudice excusing the default. *See Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010).

While the trial court addressed in some detail the various claims asserted in Petitioner's motion for relief from judgment, the Michigan Court of Appeals and the Michigan Supreme Court both declined to review such on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Controlling authority in the Sixth Circuit used to hold that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constituted a sufficient determination that the court's conclusion was based on procedural default thereby precluding federal habeas review. *See, e.g., Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002).

As the Sixth Circuit has more recently concluded, however, such form orders are no longer sufficient to establish that a petitioner has procedurally defaulted the claim in question. *See Guilmette v. Howes*, 624 F.3d 286, 288-92 (6th Cir. 2010). Instead, the Court must look to the "last reasoned state court opinion" to determine whether a particular claim has been denied on the merits or for failure to comply with a state procedural requirement. *Id.* at 291. Here, the "last reasoned state court opinion," is the decision by the trial judge denying Petitioner's motion for relief from judgment. *People v. Thompson*, No. 05-51490-FC, Opinion and Order (Muskegon Cnty. Cir. Ct.,

8

November 8, 2007).[1]

The four issues that Petitioner advances in this Court were presented to the trial court in his motion for relief from judgment.[2]  The trial judge denied on the merits Petitioner's request for relief and did not rely on a failure to comply with a state procedural requirement as a basis for denying review.  *Id.*  Accordingly, the undersigned concludes that Petitioner has not procedurally defaulted the habeas claims asserted herein and such will be addressed on the merits pursuant to the standard articulated above.

## II.        Voluntariness of Petitioner's No Contest Plea

Petitioner asserts that he is entitled to habeas relief because his no contest plea was "based on an illusory plea bargain" and, therefore, involuntary.  Specifically, Petitioner asserts that in return for pleading no contest to the two charges of which he was convicted, the prosecutor agreed to dismiss numerous other charges on which the statute of limitations had already expired. According to Petitioner, because he could not have been convicted of any of these other charges, the agreement to plead no contest in return for the dismissal of these claims was illusory as he derived no benefit therefrom.

A no contest plea, like a guilty plea, is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.*  By

---

[1] A copy of this decision is contained within docket entry #16.

[2] A copy of the motion and brief that Petitioner submitted in support of his motion for relief from judgment is located in docket entry #17.

pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

As noted above, the *Boykin* Court identified certain rights which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992

WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question presented by Petitioner's claim is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading no contest.  Rather, the question is whether Petitioner's decision to plead no contest was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences."  The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Determining whether a plea of no contest satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea."  *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

At the April 15, 2005 plea hearing, the trial judge discussed the matter at length with Petitioner, Petitioner's counsel, and the prosecuting attorney.  The trial judge confirmed that in return for pleading no contest to two counts of First Degree Criminal Sexual Conduct involving R.P., the

11

prosecution agreed "not to charge additional counts of criminal sexual conduct" regarding Petitioner's conduct with R.P. and "other potential alleged victims" prior to March 13, 2005. (Plea Transcript, April 15, 2005, 3-13).

      The trial judge confirmed with Petitioner that he understood the potential penalties that accompanied a conviction for First Degree Criminal Sexual Conduct. (Tr. 6). The trial judge also ensured that Petitioner understood that by pleading no contest he would be surrendering the following rights: (1) right to trial by jury; (2) the presumption of innocence; (3) the right to compel the prosecution to prove his guilt beyond a reasonable doubt; (4) the right to compel the appearance at trial of the witnesses against him; (5) the right to confront and question the witnesses against him; (6) the right to compel the court to produce favorable witnesses for trial; (7) the right not to testify; (8) the right not to have his silence be considered as evidence of his guilt; and (9) the right to testify at trial if he so desired. (Tr. 6-9). Petitioner stated that he understood what it meant to waive his constitutional rights. (Tr. 8). Petitioner further stated that he understood that by pleading no contest to the two charges of First Degree Criminal Sexual Conduct he would be surrendering these constitutional rights. (Tr. 9-10).

      Petitioner also acknowledged that: (1) he had not been promised anything that was not part of the plea agreement; (2) he had not been threatened to plead no contest; (3) it was his choice to plead no contest; and (4) he wished to plead no contest so as to avoid civil liability for his actions. (Tr. 11-12). Finding that Petitioner's pleas of no contest were made voluntarily and with sufficient understand, the court accepted Petitioner's pleas of no contest to two counts of First Degree Criminal Sexual Conduct. (Tr. 15).

      In light of these facts, Petitioner's argument that his decision to plead no contest was

not made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences" is unpersuasive. Petitioner's argument that he received no benefit from his plea agreement is equally unpersuasive.

As previously noted, Petitioner's argument is that because all the potential charges which the prosecution agreed not to pursue, as part of the plea agreement, were all time-barred he received no benefit from the plea agreement. The police report which was made part of the record at Petitioner's plea hearing describes allegations by R.P. of more than twenty separate instances in which Petitioner engaged in conduct that satisfies the definition of First Degree Criminal Sexual Conduct. (Dkt. #18; Mich. Comp. Laws § 750.520b). The police report also describes allegations by R.P.'s younger brother, R.P., of numerous instances in which Petitioner engaged in conduct that satisfies the definition of Second Degree Criminal Sexual Conduct. (Dkt. #18; Mich. Comp. Laws § 750.520c). As these alleged violations all occurred no earlier than 2003, the statute of limitations would not have prevented the prosecution from seeking convictions on such. *See* Mich. Comp Laws § 767.24. Simply put, Petitioner obtained a great benefit from the plea agreement into which he entered.

The trial court rejected this argument, finding that because the additional charges with which Petitioner could have been charged were not barred by the statute of limitations, the plea agreement into which Petitioner entered "was not illusory." *People v. Thompson*, Case No. 05-51490-FC, Opinion at 2 (Muskegon Cnty. Cir. Ct., Nov. 8, 2007). The court also found no merit to Petitioner's argument that his no contest plea was somehow invalid. *Id.* at 2-5. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not

13

based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**III.        Sentencing Claims**

With respect to his sentencing, Petitioner advances three claims.  First, Petitioner asserts that in calculating his sentence, the trial court improperly scored certain offense variables. Next, Petitioner asserts that the trial court imposed too harsh a sentence.  Finally, Petitioner also asserts that in calculating his sentence, the trial court "relied upon uncharged time barred issues" in violation of his right not to be subject to ex post facto laws.

A.        Guideline Scoring

Petitioner's claim that the trial judge violated Michigan law by improperly scoring the relevant offense variables presents a state law claim that is not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).

B.        Severity of Petitioner's Sentence

As the Sixth Circuit has observed, because the United States Constitution "contains no strict proportionality guarantee," a claim that the sentencing court violated Michigan's principles of proportionality is not cognizable on federal habeas review.  *Lunsford v. Hofbauer*, 1995 WL

236677 at *2 (6th Cir., April 21, 1995) (citing *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991)); *Butz*, 2009 WL 33462 at *4 (citing *Lunsford*, 1995 WL 236677 at *2). Moreover, the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence." *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Layne*, 324 F.3d at 473. In this case, Petitioner's sentence is in no way "grossly disproportionate" to the crime committed.

### C.    Ex Post Facto Claim

The sentencing guidelines in this matter directed that Petitioner be sentenced to prison for a period of between 135 (11 years, 3 months) and 225 months (18 years, 9 months). (Sentencing Transcript, May 5, 2005, 15). The trial judge, however, imposed on Petitioner a sentence in excess of that suggested by the sentencing guidelines. (Tr. 15-23). In support of this upward departure, the trial judge specifically relied on information in the presentence report that "the victim reports numerous sexual misconducts by [Petitioner] occurring over one year." (Tr. 15-18). The trial judge also relied on Petitioner's "sexual contacts with other underaged boys as substantiated by the police report" that was entered into the record at Petitioner's plea hearing. (Tr. 20-22). According to the police report, these additional "sexual contacts with other underaged boys" occurred as early as 1975 and continued through approximately 2003. Petitioner argues that the trial court's reliance "upon uncharged time barred issues to sentence [Petitioner] outside of the guidelines" violates the *Ex Post Facto* clause of the United States Constitution.

The *Ex Post Facto* clause provides that "no State shall. . .pass any. . .ex post facto

15

Law." U.S. Const. art. I, § 10, cl. 1.  This provision embodies a "presumption against the retroactive application of new laws" and is "an essential thread in the mantle of protection that the law affords the individual citizen." *Lynce v. Mathis*, 519 U.S. 433, 439 (1997).  The *Ex Post Facto* Clause has been interpreted as prohibiting the enactment of any law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Ruhlman v. Brunsman*, 664 F.3d 615, 619 (6th Cir. 2011) (quoting *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)). However, the *Ex Post Facto* Clause does not prohibit legislative changes that merely result in "some ambiguous sort of 'disadvantage,'" but instead only prohibits retroactively applied changes that "alter[] the definition of criminal conduct or increases the penalty by which the crime is punishable." *Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007) (citation omitted).  Accordingly, "[t]o fall within the *ex post facto* prohibition, a law must be retrospective - that is, 'it must apply to events occurring before its enactment' - and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime.'" *Lynce v. Mathis*, 519 U.S. at 441.

Issues implicating the *Ex Post Facto* Clause can certainly arise in the criminal sentencing context.  For example, the Supreme Court has long held that where the punishment for a criminal act is enhanced or increased after an individual commits such act, the individual cannot be sentenced under the subsequent, more severe, provision. *See, e.g., Lindsey v. Washington*, 301 U.S. 397, 400-01 (1937) (observing that the *Ex Post Facto* Clause "forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer").  The Court has also held that the *Ex Post Facto* Clause "forbids the States to enhance the measure of punishment by altering the substantive 'formula' used to calculate the

16

applicable sentencing range." *California Department of Corrections v. Morales*, 514 U.S. 499, 505 (1995) (citing *Miller v. Florida*, 482 U.S. 423 (1987) and *Weaver v. Graham*, 450 U.S. 24 (1981)).

In the present case, Petitioner has failed to identify any change, modification, or enactment in any law or other provision, implemented after he committed the crimes of which he was convicted, which has in any way altered the definition of his crimes or increased the penalty that can be imposed for such. Instead, Petitioner is simply unhappy that the trial court decided, based on Petitioner's history as a child predator, to impose on Petitioner a sentence that represented an upward departure from the sentencing range recommended by Michigan's sentencing guidelines, but nevertheless was well within the punishment permitted by Michigan law.

When Petitioner committed the crimes for which he was convicted, First Degree Criminal Sexual Conduct was punishable "by imprisonment for life or for any term of years." Mich. Comp. Laws § 750.520b. This provision did not change between the date Petitioner committed the crimes of which he was convicted and the date on which he was sentenced for such. When Petitioner committed these crimes, Michigan sentencing guidelines permitted the sentencing court to "depart from the appropriate sentence range established under the sentencing guidelines. . .if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." Mich. Comp. Laws § 769.34(3). Likewise, this provision was not altered between the date Petitioner committed the crimes of which he was convicted and the date on which he was sentenced for such. Finally, Petitioner has failed to identify any provision that was enacted after he committed the crimes in question that was retroactively applied to modify the definition of his crimes or the punishment allowed for such.

In sum, Petitioner has failed to identify any law or other provision that was modified

or enacted after he committed the crimes in question and then retroactively applied to his detriment. The trial court rejected Petitioner's sentencing claims.  In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

IV.            **Ineffective Assistance of Counsel**

Petitioner asserts that his right to the effective assistance of counsel was violated by both his trial and appellate counsel.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.  *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011).  To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.  Prejudice, in this context, has been defined as "a reasonable

18

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690).  This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740.  Likewise, the standard by which petitions for habeas relief are judged is "highly deferential."  Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential.  *Id.* (citations omitted).  As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

A.     Trial Counsel

Petitioner asserts that his trial counsel's "recommendation of the illusory bargain

19

constituted ineffective assistance of counsel."  Petitioner also asserts that his attorney failed to disclose certain "exculpatory evidence" and assured him that he would be sentenced to between 9 and 11 years in prison.  Petitioner asserts that had he been aware of this evidence and his eventual sentence he would not have agreed to the plea deal, but would have instead proceeded to trial because he was innocent of any wrong doing.

As discussed above, the benefit that Petitioner received from entering into a plea agreement was substantial and anything but illusory.  Petitioner's claim that his attorney rendered ineffective assistance by failing to disclose exculpatory evidence and misinforming him as to the sentence he would receive is equally unavailing.

The allegedly exculpatory evidence to which Petitioner refers is contained within the police report that, as discussed above, was presented to the trial court during Petitioner's plea hearing and made part of the record.  According to the police report, R.P. and his younger brother, R.P., were "checked" by a doctor who "found nothing wrong with them."  (Dkt. #18 at 4).  Petitioner asserts that he was not informed of this information until after he pleaded no contest.

Petitioner's argument that the results of these medical "examinations" constitutes exculpatory evidence conveniently omits that the police report further indicates that the doctor "found nothing wrong" because the children were "checked" so long after the alleged abuse.  *Id.* Furthermore, as the trial judge also noted:

> The vast majority of the allegations made against defendant involved the giving and receiving of oral sex.  There is nothing in the act of oral sex which would ordinarily cause physical injuries which could be observed by a physician.  Insertion of objects in the child's rectum would not necessarily cause a physical injury, depending on the size of the object and the circumstances surrounding the insertion.

*People v. Thompson*, Case No. 05-51490-FC, Opinion at 4 (Muskegon Cnty. Cir. Ct., Nov. 8, 2007).

   The trial judge concluded that counsel's alleged failure to inform Petitioner of the information in question did not constitute deficient performance because "the medical report did not provide exculpatory evidence in favor of defendant." *Id.*

   As for Petitioner's claim that his attorney informed him that if he pleaded no contest he would receive a prison sentence of between 9-11 years, the trial judge rejected such as contradicted by the evidence of record. *Id.* at 3. As the trial judge correctly observed, the plea hearing revealed that there were "no negotiations with respect to the sentence." (Plea Hearing, April 15, 2005, 3). Petitioner testified that he understood that if he was convicted of the charges in question he faced "a maximum possible sentence of life in prison or any term of years in prison." (Tr. 6). Petitioner also testified that the plea agreement did not include any discussion of possible sentence. (Tr. 10-11). The trial judge also stated on the record that he "has not participated in any plea discussions and I have not discussed the possible sentences with either the Prosecutor, or Defendant, or Defense Counsel, or with anyone acting in the interest of any party." (Tr. 14).

   In sum, the trial judge rejected Petitioner's ineffective assistance of counsel claims on the ground that counsel did not render deficient performance. Considering the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

   Furthermore, even if the Court assumes that counsel's performance was deficient, Petitioner must still establish that he was prejudiced by such. As the Supreme Court has indicated,

where a petitioner asserts that but for counsel's allegedly deficient performance he would not have agreed to plead guilty, but would have instead proceeded to trial, to establish that he was prejudiced by his attorney's allegedly deficient performance, the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010); *see also*, *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (reiterating that to satisfy the prejudice prong, the petitioner cannot merely assert that he would have gone to trial absent the allegedly deficient performance, but must instead "convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

Petitioner has not even attempted to make such a showing. A review of the police report that was entered into the record belies any assertion that it would have been a rational decision for Petitioner to reject the plea agreement and proceed to trial. R.P. informed police that on "more than" twenty occasions Petitioner engaged in oral sex with him. (Dkt. #18 at 6-8). R.P. informed police that on another six or seven occasions Petitioner penetrated his anus with "a yellow thing" that resembled a penis. (Dkt. #18 at 8-9). R.P. informed the police that Petitioner showed him pornographic movies depicting homosexual activity involving "boys." (Dkt. #18 at 9). R.P.'s younger brother, R.P., also informed police that on "about ten" occasions, Petitioner "played with his weenie with his hand." (Dkt. #18 at 10-11).

The police report also detailed that six other boys reported that Petitioner had sexually assaulted them on numerous occasions. (Dkt. #18 at 13-18, 29-34). Five of these boys expressly indicated that they were willing to testify about the events in question. (Dkt. #18 at 13-18). The police report also details the results of a search executed on Petitioner's residence following his arrest. Among the items recovered from Petitioner's residence were numerous pornographic movies,

magazines, and images, including photographs of "a young nude male." (Dkt. #18 at 25-29).

While Petitioner asserts that he is innocent and would have proceeded to trial absent his attorney's alleged shortcomings, he offers no evidence in support of either proposition. Given the overwhelming amount of evidence that the police uncovered indicating that Petitioner had a lengthy history of sexually assaulting young boys, and in light of Petitioner's complete failure to demonstrate that such evidence was false or otherwise subject to challenge, the Court concludes that Petitioner has failed to demonstrate that it would have been rational, under the circumstances, to reject the plea agreement, from which he received enormous benefit, and instead proceed to trial. Accordingly, for the reasons discussed above, the undersigned recommends that Plaintiff's ineffective assistance of trial counsel claims be rejected.

B.      Appellate Counsel

Petitioner faults his appellate counsel for failing to assert on his direct appeal the claim that Petitioner's trial counsel was ineffective for the reasons detailed above. As discussed above, Petitioner's trial counsel did not render ineffective assistance thus it would have been futile for counsel to assert such. Thus, even if the Court assumes that Petitioner's appellate counsel was deficient in failing to assert such claims, Petitioner cannot establish that he was prejudiced thereby as such claim is without merit. Accordingly, the Court recommends that Petitioner's claim of ineffective assistance of appellate counsel be rejected.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Thompson's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  April 25, 2012                              /s/ Ellen S. Carmody
                                                             ELLEN S. CARMODY
                                                             United States Magistrate Judge